TH:APW/JKW/JBD
F. #2020R00638

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -

RICK JASMIN,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT

(18 U.S.C. §§ 1028(a)(7) & (b)(1)(D))

No. 23-MJ-483

EASTERN DISTRICT OF NEW YORK, SS:

       JAMES GRZELAK, being duly sworn, deposes and states that he is a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

       In or about and between December 2020 and April 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICK JASMIN, together with others, did knowingly and intentionally transfer, possess and use, without lawful authority, and in and affecting interstate and foreign commerce, one or more means of identification of one or more other persons, to wit: the name of Victim A, an individual whose identity is known to the affiant, with the intent to commit, and to aid and abet, and in connection with, unlawful activity that constituted one or more violations of Federal law, to wit: violations of Title 18, United States Code, Sections 1341 and 1343, in and affecting interstate and foreign commerce and, as a result of the offense, obtained things of value aggregating $1,000 or more during a one-year period.

(Title 18, United States Code, Sections 1028(a)(7) and (b)(1)(D))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been a Task Force Officer with Homeland Security Investigations ("HSI") Violent Gang Task Force for more than four years.  I have been a detective with the New York City Police Department ("NYPD") for seven years and a member of the NYPD for 15 years.  As a member of the Violent Gang Task Force, I am assigned to investigate gangs and other criminal organizations and crimes in which they are engaged, which include racketeering, violent crimes, narcotics trafficking, firearms trafficking, robbery, car thefts and other offenses.  I am familiar with the facts and circumstances set forth below from personal knowledge, my review of the investigative file and reports of other law enforcement officers involved in the investigation.  Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only.

2.      As described below, I submit that there is probable cause to believe that the defendant RICK JASMIN, together with others, transferred, possessed and used the name of another person (Victim A) to obtain unemployment insurance benefits in Victim A's name from New York State.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. Based on my communications with investigators with the New York State Department of Labor ("NYSDOL") and my participation in this investigation, I have learned the following:

    a. Unemployment Insurance ("UI") is a state-federal program that provides monetary benefits to lawful workers. Although state workforce agencies (SWAs) administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of your earnings over a base period. The NYSDOL administers the UI program for New York State and distributes UI benefits through the New York State Unemployment Insurance Fund ("NYSUIF").

    b. On March 13, 2020, the President declared the Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. Sections 5121-5207 (the "Stafford Act").

    c. On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. It expanded states' ability to provide UI for

Case 1:23-mj-00483-JRC   Document 1   Filed 05/23/23   Page 4 of 9 PageID #: 4

4

many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

        d.      The first program, PUA, provided for up to 39 weeks of benefits to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage included individuals who had exhausted all rights to regular UI or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by NYSDOL if he/she previously performed such work in New York and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason. A PUA claimant had to answer various questions to establish his/her eligibility for PUA benefits. The claimant had to provide his/her name, Social Security Number, and mailing address. The claimant also had to identify a qualifying occupational status and COVID-19 related reason for being out of work. The eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

        e.      The second program, PEUC, provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law, had no rights to regular UI under any other state or federal law, were not receiving UI under the UI laws of Canada, and were able to work, available for work, and actively seeking work. However,

states offered flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government—the earliest being April 5, 2020—through December 31, 2020.

      f.      The third program, FPUC, provided individuals who were collecting regular UI, PEUC, PUA, and several other forms of UI with an additional $600 per week. The eligible timeframe to receive PEUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government—the earliest being April 5, 2020—through July 31, 2020.

      g.      On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 Other Needs Assistance of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19. The "Lost Wages Assistance Program" ("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds. The period of assistance for LWAP is August 1, 2020 to December 27, 2020, or termination of the program, whichever is sooner.

      h.      On December 27, 2020, the President signed the Consolidated Appropriations Act, 2021 into law, which included the Continued Assistance for Unemployed Workers Act of 2020 (the "Continued Assistance Act"). The Continued Assistance Act extended PUA benefits to March 14, 2021 and reauthorized and modified FPUC to provide supplemental payments of $300 per week for the period between on or

about December 26, 2020 through March 14, 2021.

          i.      There were two primary methods to file for NYSUIF benefits: online through the NYSDOL website and by telephone through a NYSDOL call center. If the claim was accepted, the claimant was required to establish, on a weekly basis, his or her continued eligibility for UI benefits. The claimant could complete this recertification by answering a series of questions on the NYDOL website or through a NYSDOL call center.

          j.      KeyBank National Association ("KeyBank") was a bank headquartered in Cleveland, Ohio. The NYSDOL used KeyBank bank accounts to fund NYSUIF benefits. KeyBank issued some claimants debit cards to which NYSUIF payments were credited. Other claimants acquired reloadable cards issued by different banks and provided the information for the reloadable cards through the NYSDOL website, which cards were then loaded with NYSUIF benefit payments. Other claimants had NYSUIF benefits directly deposited into personal bank accounts.

    4.      As described below, the defendant RICK JASMIN engaged in a scheme to fraudulently obtain UI benefits beginning in or about December 2020 using the name and other identifying information of Victim A.

    5.      During the course of the investigation, law enforcement agents obtained communications between RICK JASMIN and other individuals regarding a scheme to obtain UI benefits using Victim A's identity. Pursuant to a judicially authorized search of RICK JASMIN's Samsung GSM SM-G530T1 Galaxy cell phone (the "Jasmin Phone"), agents recovered among other things, a text message from an individual to JASMIN on January 28, 2021 stating, "[Victim A's name] to **11 Avenue M" (the "Avenue M

Address"). Based on my involvement in this investigation, I am aware that the Avenue M Address was JASMIN's home address through on or about March 20, 2021.

6. Agents also recovered video files reflecting the defendant RICK JASMIN's involvement in the scheme to obtain UI benefits using Victim A's identity. The first video, recorded on January 30, 2021, showed a stack of letters received from the NYSDOL, with an individual in the background chanting, "addy, addy, addy." Based on my involvement in this investigation, I recognize the voice in the video to be JASMIN's. The second video file, taken on February 23, 2021, shows a KeyBank debit card. Based on my training and experience and involvement in this investigation, I recognize that debit card to be consistent with the debit cards issued by NYSDOL to pay UI benefits. The third video, also taken on February 23, 2021, showed a letter sent by NYSDOL to an individual whose last name ends in the last six letters as Victim A's name and addressed to the Avenue M Address (i.e., JASMIN's address).

7. Moreover, the search of the Jasmin Phone revealed several emails— sent to multiple Gmail accounts between January 24, 2021 and February 23, 2021—from the NYSDOL and other states' workforce agencies relating to applications for UI benefits in the names of several individuals, including Victim A. A review of the search history on the Jasmin Phone revealed more than 20 instances in which the Jasmin Phone was used to access the unemployment section of the NYSDOL website or conduct searches relating to UI benefits between December 21, 2020 and January 11, 2021. Based on my training and experience and involvement in this investigation, I know that the NYSDOL website requires that individuals applying for UI benefits must provide, among other things, their names,

8

social security numbers, government-issued identification, and detailed information about their employment history.

        8.      An NYSDOL investigation revealed that an unemployment claim was filed in Victim A's name using the Avenue M Address, and that, based on the claim, $6,330 was paid to a KeyBank debit card account in Victim A's name between February 26, 2021 and March 23, 2021.

        9.      Agents subsequently interviewed Victim A at Victim A's residence in Pearl River, New York. During that interview, Victim A told agents, in sum, substance and in part, that Victim A was unaware of any unemployment claims being submitted using Victim A's identity; that Victim A had not recently filed for any UI benefits; and that Victim A did not give anyone permission to apply for UI benefits on Victim A's behalf.

        10.      Based on the information above, I believe that the defendant RICK JASMIN was engaged in a scheme to fraudulently obtain UI benefits using Victim A's name and other identifying information and that, as part of that scheme, JASMIN fraudulently obtained one or more debit cards from NYSDOL through the mails.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant RICK JASMIN so that he may be dealt with according to law.

/s/ James Grzelak
_____
JAMES GRZELAK
Task Force Officer, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this 23rd
day of May, 2023 by telephone

   s/ James R. Cho
_____
THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK